UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ALEXANDER STEIN,<br>    Plaintiff,<br><br>v.<br><br>CITY OF NEW YORK,<br>    Defendant. | Case No. 24-cv-6877<br><br>**COMPLAINT** |

Plaintiff ALEXANDER STEIN (hereinafter, "Plaintiff" or "Stein"), by and through his undersigned counsel, respectfully alleges as follows:

### INTRODUCTION AND STATEMENT OF THE CASE

1. On September 10, 2024, Plaintiff Alex Stein sat before the New York City Council during time reserved for public comment and expressed an unpopular idea, namely, he suggested that the New York Port Authority may have been involved in a conspiracy related to the attack on September 11, 2001. For expressing that idea, Mr. Stein was repeatedly physically assaulted by the security in a use of force that was obviously and objectively excessive and dangerous. Mr. Stein suffered injuries as a result of the assault. The entire encounter was captured on video.

2. Mr. Stein seeks damages for his injuries and for the violation of his Constitutional rights.

### JURISDICTION AND VENUE

3. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331, 1343(3), and 42 U.S.C. § 1983, which confer original jurisdiction on federal district courts in suits to redress the deprivation of rights, privileges and immunities secured by

the laws and Constitution of the United States.  This Court has supplemental jurisdiction over all state law claims under 28 U.S.C. § 1367(a).

4. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b), because the acts and transactions complained of occurred, and continue to occur in this District.

## PARTIES

5. Plaintiff ALEXANDER STEIN is an adult citizen of the State of Texas.

6. Defendant CITY OF NEW YORK is a corporation authorized to do business in the state of New York and having its principal place of business there.

## FACTS

7. On September 10, 2024, a New York City Council committee meeting took place at New York City Hall.

8. Mr. Stein spoke during the time reserved for public comment.

9. Mr. Stein sincerely maintains the belief that there are legitimate unanswered questions about New York City's Port Authoritie's potential involvement in the attacks on September 11, 2001. He also believes that the Government is withholding information from the public about 9/11 that may implicate government officials, including members of the Port Authority.

10. This belief is not popular among government officials in New York.

11. In America it is permitted to maintain unpopular beliefs.

12. The First Amendment guarantees the right to petition the government for a redress of grievances.

13. On September 10, 2024, Mr. Stein went to the New York City Council meeting to peacefully, through the delivery of a public comment, petition the New York City Government

for a redress of his grievance that the New York City Government is withholding information about 9/11 from the public.

14. Mr. Stein's First Amendment rights were violated because he was retaliated against for exercising his First Amendment right.

15. As Mr. Stein delivered his public comment, a New York City council member interjected and asserted that Mr. Stein's comments were not appropriate for the meeting.

16. Mr. Stein peacefully disputed the Council member's assertion.

17. The City Council member ordered security to remove Mr. Stein from the chamber.

18. Mr. Stein was sitting peacefully at the table designated for public speakers at the time.

19. Suddenly, and without warning, a security guard grabbed Mr. Stein by the back of the neck, grabbing Mr. Stein so forcefully and suddenly from behind that the security pulled on Mr. Stein's jacket so violently that he ripped the buttons off the front of the jacket. and

20. The security guard yanked Mr. Stein from the chair he was sitting in, knocking the chair over and pulling Mr. Stein to the ground.

21. The security guard was employed by the Defendant and was acting under the color of law.

22. Mr. Stein fell to the ground and his knees hit the ground hard.

23. Mr. Stein exclaimed in surprise, "what is going on?"

24. Mr. Stein was swiftly, forcefully, and violently pushed and pulled simultaneously away from the table and physically dragged across the room.

25. His arm was yanked in a way that caused him immediate and severe pain in his elbow.

26. Stein was yanked away from the table before he could even gather his possessions, including his phone.

27. Stein told security repeatedly that he would leave.

28. He said, "I'll leave! I'll leave!"

29. Despite Stein's insistence that he would leave willingly, the security continued to violently, forcibly, push him out of the chamber.

30. He asked, "why are you touching me?"

31. When he left the chamber, they continued to shove him violently as he continued to peacefully cooperate.

32. At no time did Mr. Stein resist.

33. Mr. Stein did not pose a threat to anyone.

34. There was no reason to believe Mr. Stein posed a threat to anyone.

35. No statements by anyone were made indicating that anyone belevied that Mr. Stein posed a threat to anyone.

36. The security was only ordered to remove Mr. Stein from the chamber.

37. They continued to violently shove him outside the chamber.

38. They shoved Mr. Stein while he was walking down a winding staircase.

39. The stairs were made of a slippery and hard material making them dangerous to navigate even under ordinary circumstances.

40. Knowing this, the security continued to shove Mr. Stein as he walked down the stairs.

41. Mr. Stein felt that he was in danger of falling down the stairs and suffering serious bodily injury.

42. He repeatedly told the security to cease pushing him while he was going down the stairs, but they didn't stop pushing him.

43. They continued to push him on the ground floor and pushed him all the way out of the building.

44. Even after Mr. Stein left the building, they continued to shove him, even shoving him as he walked down another flight of steps leading to an exterior door while Mr. Stein was outside the building.

45. One of the security guards followed Mr. Stein all the way to the street outside of the building.

46. Mr. Stein suffered injuries to his elbow and his knees and saw a doctor for his injuries.

47. Mr. Stein did nothing other than express a view at a public meeting during a public comment.

48. The totality of the circumstances show that the City retaliated against Mr. Stein for expressing his views.

## CAUSES OF ACTION

### COUNT I
### United States Constitution
### 42 U.S.C. § 1983: First Amendment
### Retaliation

49. The foregoing paragraphs are incorporated by reference as if set forth fully herein.

50. In order to prove a claim of First Amendment retaliation, a plaintiff must show (1) he has an interest protected by the First Amendment; (2) defendants' actions were motivated or substantially caused by his exercise of that right; and (3) defendants' actions effectively chilled the exercise of his First Amendment right.

51.     Mr. Stein had a protected interest in speaking during the public comments portion of a City Council Meeting which is a limited public forum.

52.     The egregious violent physical force used by the security against Mr. Stein that was captured on video was far in excess than what was necessary to remove Mr. Stein from the chamber.

53.     The actions were motivated by Stein's exercise of his right to express an unpopular view about the events of 9/11.

54.     It is understandable that New Yorkers, especially police officers or security personel, may take offense to Mr. Stein's views about 9/11, especially a day before the anniversary of the event.

55.     But it is not understandable or reasonable for a police officer or security personel to act on that offense and use violence against a speaker for expressing his views as the police and/or security did in this case.

56.     Defendant's actions of using violence and force in retaliation for speaking at a public meeting have chilled Mr. Stein's exercise of free speech.

57.     Mr. Stein has spoken at dozens of public meetings around the country and was never so fearful for his safety as he was at the New York City Council meeting on September 10, 2024. He is concerned that if he returns to the New York City Council he will be met again with violence and could suffer further injuries. This would chill a reasonable person from exercising a First Amendment right.

58.     Any reasonable official or officer should have known that using unnecessary and excessive force against Mr. Stein in retaliation for speaking at a meeting was a violation of Mr. Stein's constitutional rights.

59. Defendant acted "under the color of law."

**COUNT II**
**United States Constitution**
**42 U.S.C. § 1983: Fourth Amendment**
**Excessive Force**

60. The foregoing paragraphs are incorporated by reference as if set forth fully herein.

61. The elements for § 1983 use of excessive force claim are substantially identical to a state law assault and battery claim, namely, the plaintiff must prove that the officer's use of force was excessive or objectively unreasonable under the circumstances. The inquiry is necessarily fact specific and requires balancing the nature and quality of the intrusion on the plaintiff's Fourth Amendment interests against the countervailing governmental interests at stake. In conducting that balancing, at least three factors are considered: (1) the nature and severity of the crime leading to the arrest, (2) whether the suspect poses an immediate threat to the safety of the officer or others, and (3) whether the suspect was actively resisting arrest or attempting to evade arrest by flight. The only issue to determine in assessing qualified immunity is whether the Officers' conduct was objectively reasonable — the very question upon which the Second Circuit has found there are genuine issues of material fact.

62. Here, there was no crime alleged, no arrest, and no probable cause for arrest.

63. Further, Mr. Stein did not pose any threat to anyone's safety - immediate or otherwise.

64. Further, Mr. Stein did not resist.

65. The force used against Mr. Stein by the security was objectively unreasonable.

**PRAYER FOR RELIEF**

A. An order declaring Defendant's conduct to be unlawful and unconstitutional;

B. An order enjoining Defendant from continuing to engage in conduct found to be unconstitutional;

C. An order enjoining Defendant from depriving Plaintiff of his constitutional right of free speech at public meetings;

D. An order awarding Plaintiff's damages;

E. An order awarding punitive damages;

F. An order awarding reasonable Plaintiff attorneys' fees for bringing this action.

G. Any other relief the Court judges to be proper.

## DEMAND FOR JURY

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff hereby demands a trial by jury in this action on all issues so triable.

Dated: September 11, 2024                              Respectfully submitted,

/s/ Jonathan Gross
Jonathan Gross, Esq.
NY Bar No.5993001
2833 Smith Ave, Suite 331
Baltimore, MD 21209
(443) 813-0141
jonathansgross@gmail.com

*Counsel for Plaintiff*